**IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF GEORGIA
VALDOSTA DIVISION**

| | | |
|---|---|---|
| NDUDI BENSON ADU, | : | |
| | : | |
| Petitioner, | : | |
| | : | |
| v. | : | CASE NO. 7:18-CV-103-WLS-MSH[1] |
| | : | 28 U.S.C. § 2241 |
| PHIL BICKHAM, *et al.*,[2] | : | |
| | : | |
| Respondents. | : | |

## ORDER AND REPORT & RECOMMENDATION

Presently pending before the Court is Petitioner's amended application for habeas corpus relief under 28 U.S.C. § 2241 (ECF No. 12) and motion to correct this case's caption (ECF No. 54), and Respondents' motion to dismiss Petitioner's application for habeas relief (ECF No. 30). For the reasons explained below, Petitioner's motion to correct the case caption is granted. It is recommended that his amended application for habeas relief be granted and Respondents' motion to dismiss be denied.

## BACKGROUND

Petitioner is a native and citizen of Nigeria. Mot. to Dismiss 3, ECF No. 30. About five years ago, on November 18, 2013, he was detained by the Department of Homeland Security ("DHS") as an "arriving alien" after attempting to enter the United States with an

---

[1] Petitioner's first application for habeas corpus relief was filed in this Court on October 4, 2017, and docketed as case number 7-17-CV-171-HL-MSH. Order, November 13, 2017, ECF No. 4.

[2] The case caption has been altered here to reflect the Court's granting of Petitioner's motion to correct the same (ECF No. 54).

expired visa. *Id.* On November 25, 2013, DHS presented Petitioner with a Notice to Appear ("NTA") which alleged he was removable under INA § 212(a)(7)(i)(I), 8 U.S.C. § 1182 (a)(7)(i)(I)—as an alien who did not possess a valid unexpired immigrant visa or other entry document when applying for admission to the United States. *Id.*

Petitioner's first order of removal became final on December 23, 2014, after the Board of Immigration Appeals ("BIA") denied his appeal of an Immigration Judge's ("IJ's") removal order. Mot. to Dismiss Ex. D, ECF No. 30-1. Petitioner sought review of the BIA's decision in the U.S. Court of Appeals for the Eleventh Circuit which remanded his administrative case on May 23, 2016. Mot. to Dismiss Ex. H[3]. On September 20, 2017, the Eleventh Circuit declared that Petitioner's first final removal order "no longer qualified" as such because the BIA had granted Petitioner's motion to reopen his administrative case. Mot. to Dismiss Ex. L.

Meanwhile, an IJ ordered Petitioner removed—for the second time—on November 22, 2016. Mot. to Dismiss Ex. B. The BIA affirmed that ruling on May 17, 2017. Mot. to Dismiss Ex. C. Petitioner sought judicial review of this second final order and, in a September 20, 2017, order, the Eleventh Circuit stayed Petitioner's removal pending a decision on his substantive appeal. Mot. to Dismiss Ex L. As of September 27, 2018, the Eleventh Circuit had not issued a ruling on Petitioner's pending appeals, and neither party has since informed the Court of such a ruling. *See* Resp'ts' Resp. to Suppl. Br. 6, ECF No. 57.

---

[3] Though Respondents attached numerous exhibits to their motion to dismiss (ECF No. 30), they all can be found at document No. 30-1.

Petitioner first applied for habeas relief in this Court on October 4, 2017 (ECF No. 1). After Respondents answered that initial application, Petitioner submitted an amended application for habeas relief (ECF No. 12). He then moved to transfer the case to the United States District Court for the Southern District of Georgia, because he was transferred to the Folkston Detention Center in Folkston, Georgia. Mot. to Transfer 1, 2, ECF No. 16. The case was transferred to the Southern District of Georgia on February 13, 2018. Order 1, ECF No. 17. On July 3, 2018, it was transferred back to this Court. (ECF No. 40.) This Court held a hearing on August 30, 2018, then gave both parties fourteen days to supplement the record and provide additional briefing. Text-Only Orders, August 30, 2018, ECF Nos. 51, 52.

## DISCUSSION

### I. Petitioner's Habeas Claim

#### A. Legal Standard

The parties agree that Petitioner is subject to a final order of removal. Resp'ts' Resp. to Suppl. Br. 1; Tr. Of Hr'g 13, ECF No. 53; *see* Pet'r's Opening Br. 8, ECF No. 24. Therefore, his detention is governed by section 241(a) of the Immigration and Nationality Act ("INA"), 8 U.S.C. § 1231(a). That provision grants the Attorney General a ninety-day period to effectuate an alien's removal from the United States following the entry of a final order of deportation or removal. INA § 241(a)(1)(A)-(B); 8 U.S.C. § 1231(a)(1)(A)-(B). Detention is mandatory during this initial ninety-day period. INA § 241(a)(2); 8 U.S.C. § 1231(a)(2). The statute allows that period to be extended "if the alien fails or refuses to make timely application in good faith for travel or other documents necessary to the alien's

3

departure or conspires or acts to prevent the alien's removal subject to an order of removal." 8 U.S.C. § 1231(a)(1)(C).

Detention of an alien subject to an administratively final order of deportation/removal is authorized only for a period "reasonably necessary" to effectuate the removal. *Zadvydas v. Davis*, 533 U.S. 678, 699-700 (2001). In *Zadvydas*, the Supreme Court determined it was "practically necessary . . . for the sake of uniform administration in the federal courts" to establish a "presumptively reasonable period of detention." *Id*. at 701. The Court, believing "that Congress previously doubted the constitutionality of detention for more than six months[,]" set six-months as the outer boundary of that presumptively reasonable period. *Id*. Detention lasting longer than six months loses the presumption. *Id*. ("After this 6–month period, once the alien provides good reason to believe that there is no significant likelihood of removal in the reasonably foreseeable future, the Government must respond with evidence sufficient to rebut that showing."). The relationship between the time of confinement and the "reasonably foreseeable future" is an inverse one. *Id*. ("[F]or detention to remain reasonable, as the period of prior post[-]removal confinement grows, what counts as the reasonably foreseeable future conversely would have to shrink.").

The Eleventh Circuit interprets *Zadvydas* as requiring an alien to show: "(1) that the six-month period, which commences at the beginning of the statutory removal period, has expired when the § 2241 petition is filed; and (2) evidence of a good reason to believe that there is no significant likelihood of removal in the reasonably foreseeable future." *Gozo v. Napolitano*, 309 F. App'x 344, 346 (11th Cir. 2009); *see also Akinwale v. Ashcroft*, 287

F.3d 1050, 1052 (11th Cir. 2002) ("[I]n order to state a claim under *Zadvydas* the alien . . . must show post-removal detention in excess of six months [and] also must provide evidence of a good reason to believe that there is no significant likelihood of removal in the reasonably foreseeable future.").

B. Petitioner's Showing

*1. Time in Detention*

Petitioner has been detained by Respondents since November 18, 2013—a total of more than five years. He argues that "[w]henever the six-month clock started, it is clear that it has now run." Pet'r's Opening Br. 9. Respondents contend that Petitioner's habeas application should be dismissed as premature "because the six-month period of post-removal order detention has not yet tolled[.]" Resp'ts' Resp. to Suppl. Br. 3. Their assertion rests on the fact that Petitioner's most recent removal order was made final on May 17, 2017, and stayed by the Eleventh Circuit on June 28, 2017. *Id.* (citing *Akinwale*, 287 F.3d at 1052 n.4).

Respondents' argument is unpersuasive. In *Akinwale*, The Eleventh Circuit found a petitioner's habeas application premature because he "did not have even an unencumbered month of detention prior to filing his § 2241 petition, let alone the requisite six months." *Akinwale*, 287 F.3d at 1052 n.4. Here, Petitioner experienced years of unencumbered detention before applying for habeas relief. Finding his petition "premature" would require disfiguring logical contortions. Petitioner's application for habeas relief is not premature. Thus, the pertinent question is whether Petitioner has presented "good reason to believe that there is no significant likelihood of removal in the

5

reasonably foreseeable future" and if so, whether the government has sufficiently rebutted that showing.[4]  *See Gozo* 309 F. App'x 344, 346

## 2. Likelihood of Removal in Reasonably Foreseeable Future

Petitioner argues that Respondents' detention of him has created a "constitutional problem" for which there is no end "reasonably in sight." Pet'r's Suppl. Br. 9. He contends his administrative case—including review by the Eleventh Circuit—will go on "for some time" because he will exhaust all available avenues of appeal. *Id.* Petitioner shows that, whenever the Eleventh Circuit rules on his case, he will likely be detained for at least ninety more days.[5] Pet'r's Opening Br. 10. Finally, he notes that Respondents admit they are not certain when they will be able to remove Petitioner. Pet'r's Suppl. Br. 9. Petitioner's evidence shows that removal in the reasonably foreseeable future—as defined by *Zadvydas*—is not significantly likely, and requires an evidentiary response.

## C. Respondents' Evidentiary Response

Respondents contend "no institutional, bureaucratic[,] or other barriers" stand between Petitioner and removal. Resp'ts' Resp. to Suppl. Br. 7. They believe that he will

---

[4] In evaluating Petitioner's application for relief, the Court considers the "reasonably foreseeable future" to be roughly one month. Petitioner has been subject to a final order of removal for about three of the five years he has been detained.  Thus, even ignoring the practical reality that he has actually been consistently detained for over five years, Petitioner's time in detention while subject to a final order of removal equates to about six times the presumptively reasonable six-month period. The "reasonably foreseeable future"—and Petitioner's evidentiary burden—must decrease accordingly.  *See Zadvydas v. Davis,* 533 U.S. 678, 701 (2001). Therefore, the "reasonably foreseeable future" for purposes of evaluating Petitioner's application is about one month in duration.

[5] Petitioner states he will seek certiorari in the Supreme Court given an unfavorable decision by the Eleventh Circuit, and argues that process would take between ninety and one-hundred and fifty days.  Pet'r's Opening Br. 10, ECF No. 24.

6

be removed "as soon as the Eleventh Circuit rules on his cases" and that Petitioner cannot argue "that his removal is unforeseeable merely because he has petitions pending in circuit court." *Id*. Respondents insist that, regardless of his "intention to continue fighting his removal . . . Petitioner has failed to provide good reason to believe that there is no significant likelihood of removal in the reasonably foreseeable future." *Id*. at 8.

D. Analysis

Because Petitioner is a person within the United States, he is a valid recipient of due process protections. *Plyler v. Doe*, 457 U.S. 202, 210 (1982); U.S. Const. amends. X, XIV. Detainees in Petitioner's position are not required to show "the absence of *any* prospect of removal" to be eligible for relief. *Zadvydas*, 533 U.S. at 702 (emphasis in the original). Their detention does not remain lawful just because their custodians act in good faith. *Id*.

Petitioner has been detained much longer than either the statutory removal period or presumptively reasonable period, and should be released under an order of supervision. *See Zadvydas*, 533 U.S. at 699-702. He makes a sufficient showing that removal in the reasonably foreseeable future is not likely, and Respondents' rebuttal is insufficient. They argue, essentially, that delays caused by administrative proceedings—and judicial review of them—should be counted against Petitioner and not them. Resp'ts' Resp. to Suppl. Br. 7 (citing *inter alia Prieto-Romero v. Clark*, 534 F.3d 1053, 1064-65 (9th Cir. 2008). Respondents' logic would punish Petitioner for pursuing the legal remedies available to him. This comports with neither the spirit or letter of the law. *See Sopo v. U.S. Attorney Gen*., 825 F.3d 1199, 1218 (11th Cir. 2016), *vacated on procedural grounds*, 890 F.3d 952 (11th Cir. 2018); *see also Ly v. Hansen*, 351 F.3d 263, 272 (6th Cir. 2003) ("[A]ppeals and

petitions for relief are to be expected as a natural part of the [administrative] process [for aliens facing removal or deportation.]"). Further, the judiciary is not responsible for the efficiency, or lack thereof, of the administrative process. Instead, in situations such as this, courts must simply carry out the "historic purpose of the writ, namely, [relieving unlawful] detention by executive authorities[.]" *Zadvydas*, 533 U.S. at 699.

Here, that responsibility requires ordering Petitioner released under an order of supervision. The record's obvious reality cannot be ignored. Petitioner has been in Respondents' custody for over five years, with a virtually guaranteed additional three months, or more, to come. The detention statute's two primary goals can clearly be met without physical detention. *See Zadvydas*, 533 U.S. at 690 ("The statute, says the Government, has two regulatory goals: ensuring the appearance of aliens at future immigration proceedings and preventing danger to the community."). Petitioner has not shown a propensity for failing to appear at immigration proceedings or that he is a danger to the community.[6] In fact, when Respondents were asked why Petitioner, an "aged and infirm Episcopal priest," had previously been denied an order of supervision, counsel replied "I can't answer that[.]" Hr'g Tr. 16.

To summarize, Petitioner has been detained well beyond the period mandated by statute and Respondents cannot point to a clear endpoint for his detention, or any reason releasing him under supervision would be problematic. Petitioner's amended application

---

[6] Petitioner does not deny that he refused to board a plane for removal in 2015, but the record indicates that he has otherwise appeared for all administrative proceedings. *See* Pet'r's Opening Br. 11, ECF No. 24. Petitioner states he refused to board the plane because he had discovered that his wife and son had been murdered in Nigeria. *Id*.

for habeas relief (ECF No. 12) should be granted and Petitioner released under an order of supervision. Respondents' motion to dismiss Petitioner's application (ECF No. 30) should be denied.

## II. Petitioner's Motion to Correct the Case Caption

On September 13, 2018, Petitioner requested that Phil Bickham—warden of Irwin County Detention Center—be substituted for Patrick Gartland as the named Respondent in this case. Mot. to Correct Case Caption 2, ECF No. 54. He also requested that several other individuals, terminated as Respondents by the U.S. District Court for the Southern District of Georgia, be re-introduced to the case caption. *Id*. Respondents do not object to the substitution of Mr. Bickham for Mr. Gartland, but they do object to the re-introduction of the other Respondents. Resp'ts' Resp. to Mot. to Correct Case Caption 1-3, ECF No. 58. Because the Court recommends granting Petitioner's application for habeas relief, his motion to correct the case caption is granted in full.

When a petitioner challenges the validity of physical confinement via habeas petition, "the default rule is that the proper respondent is the warden of the facility where the prisoner is being held, not the Attorney General or some other remote supervisory official." *Rumsfeld v. Padilla*, 542 U.S. 426, 435 (2004). However, the Supreme Court has specifically declined to state whether this default rule applies to habeas petitions brought by alien detainees facing deportation. *See id*. at 435 n.8. ("[W]e [have previously] left open the question whether the Attorney General is a proper respondent to a habeas petition filed by an alien detained pending deportation . . . lower courts have divided on this question . . . we again decline to resolve it [here].").

9

This allowance for deviation is largely attributable to the broad authority of certain cabinet officials over our nation's immigration system. *See Henderson v. I.N.S.,* 157 F.3d 106, 126 (2d Cir. 1998) ("[T]he extraordinary and pervasive role that the Attorney General plays in immigration matters is virtually unique."). Congress has named the U.S. Attorney General as the custodian of alien detainees awaiting deportation. *See* 8 U.S.C. § 1231(a)(2) ("During the removal period, the Attorney General shall detain the alien."). In direct challenges to final orders of removal, the Attorney General must be named as the respondent. 8 U.S.C. § 1252(b)(3)(A). Congress has also granted the Secretary of Homeland Security significant authority in immigration matters. *See* 6 U.S.C. § 202; *see also* 8 U.S.C. § 1103(a) (establishing the Security of Homeland Security's responsibility for "administration and enforcement" of 8 U.S.C. Ch. 12 and "all other laws relating to the immigration and naturalization of aliens," relative to other executive officers).

This Court has previously found "no reason to deviate from the traditional habeas rule as explained in *Padilla*[,]" when considering a detained alien's habeas petition. *Braithwaite v. Holder*, No. 4:11-CV-56-CDL-MSH, 2012 WL 4210367, at *1 (M.D. Ga. Aug. 27, 2012), *report and recommendation adopted*, No. 4:11-CV-56-CDL-MSH, 2012 WL 4120416, at *1 (M.D. Ga. Sept. 19, 2012). However, there is reason to deviate here. The Court recommends granting Petitioner habeas relief—release from the physical custody of Respondents. The warden of the facility where Petitioner is detained would be unable to carry out the Court's instructions without more senior officials taking certain actions. *See Sanchez-Penunuri v. Longshore,* 7 F. Supp. 3d 1136, 1148 (D. Colo. 2013). A "jailer has never been recognized as possessing the authority to consider granting an

immigrant some sort of discretionary relief, and no such authority has ever been created through regulation." *Id*. Instead, Congress has granted such authority to the Attorney General, who, in turn, may delegate it to the Secretary of Homeland Security or other officials. 8 U.S.C. § 1231(a)(3); 8 U.S.C. § 1103(g)(2) ("The Attorney General shall . . . delegate such authority, and perform such other acts as the Attorney General determines to be necessary for carrying out this section.").

Because they are required to act in order for Petitioner to receive the recommended relief, the Respondents terminated by the U.S. District Court for the Southern District of Georgia's *sua sponte* order are proper respondents here. Accordingly, Petitioner's motion to correct the case caption (ECF No. 54) is granted in its entirety. The Clerk is directed to amend the docket to include, as Respondents, Sean Gallagher—Field Director of Atlanta Field Office of U.S. Immigration and Customs Enforcement, Kirstjen Nielsen—Secretary of Homeland Security, and Matthew Whitaker—Acting Attorney General of the United States.[7]

## CONCLUSION

For the reasons explained above, Petitioner's motion to correct the case caption (ECF No. 54) is granted, and it is recommended that Respondents' Motion to Dismiss (ECF No. 30) be denied and Petitioner's amended application for habeas corpus relief (ECF No. 12) be granted. Pursuant to 28 U.S.C. § 636(b)(1), the parties may serve and file written

---

[7] According to the Department of Justice, Mr. Whitaker has been named Acting Attorney General under the Vacancy Reform Act, 5 U.S.C. §§ 3345-3349d. *Designating an Acting Attorney General*, 42 Op. O.L.C. 1 (2018).

objections to this Recommendation, or seek an extension of time to file objections, within fourteen (14) days after being served with a copy hereof.  The district judge shall make a *de novo* determination of those portions of the Recommendation to which objection is made.  All other portions of the Recommendation may be reviewed for clear error.

The parties are hereby notified that, pursuant to Eleventh Circuit Rule 3-1, "[a] party failing to object to a magistrate judge's findings or recommendations contained in a report and recommendation in accordance with the provisions of 28 U.S.C. § 636(b)(1) waives the right to challenge on appeal the district court's order based on unobjected-to factual and legal conclusions if the party was informed of the time period for objecting and the consequences on appeal for failing to object. In the absence of a proper objection, however, the court may review on appeal for plain error if necessary in the interests of justice."

SO ORDERED AND RECOMMENDED, this 10th day of December, 2018.

/s/ Stephen Hyles
UNITED STATES MAGISTRATE JUDGE